**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) | |
| | ) | |
| Movant, | ) | No. 1:24-mc-1 |
| | ) | |
| v. | ) | Underlying case No. 1:21-cv-02900 |
| | ) | (D.D.C.) |
| GOOGLE LLC, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
OAN'S MOTION TO COMPEL THIRD PARTY GOOGLE LLC
<u>TO COMPLY WITH RULE 45 SUBPOENA</u>**

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................2

LEGAL STANDARD........................................................................................................5

ARGUMENT ....................................................................................................................7

     I.     Google Is Required to Produce Documents That Are Relevant and
           Necessary to OAN's Defense of Smartmatic's Lawsuit.........................................8

         A.     Documents on OAN's Removed YouTube Videos. ...........................................8

         B.     Documents Regarding the Biden Transition Team's Involvement in the
              December 2020 Change in Google Policy.......................................................10

     II.     Google Cannot Refuse to Comply with a Timely Subpoena. ...............................12

     III.     Google's Other Objections Are Meritless.............................................................14

     IV.     The Court Should Award Attorney's Fees.............................................................15

CONCLUSION..................................................................................................................15

CERTIFICATE OF SERVICE .........................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armenian Assembly of Am., Inc. v. Cafesjian,*
    692 F. Supp. 2d 20 (D.D.C. 2010) ..........................................................................13

*Arpaio v. Zucker,*
    414 F. Supp. 3d 84 (D.D.C. 2019) ..........................................................................10

*Athridge v. Aetna Cas. & Sur. Co.,*
    184 F.R.D. 181 (D.D.C. 1998) ................................................................................14

*Barnes v. D.C.,*
    289 F.R.D. 1 (D.D.C. 2012) ....................................................................................12

*BuzzFeed, Inc. v. U.S. Dep't of Just.,*
    318 F. Supp. 3d 347 (D.D.C. 2018) ......................................................................9, 11

*CSS, Inc. v. Herrington,*
    No. 2:16-CV-01762, 2018 WL 7131556 (S.D.W. Va. Jan. 9, 2018)......................13

*In re Denture Cream Prods. Liab. Litig.,*
    292 F.R.D. 120 (D.D.C. 2013)..............................................................................6, 8

*Lurie v. Mid-Atl. Permanente Med. Grp., P.C.,*
    262 F.R.D. 29 (D.D.C. 2009) ..................................................................................12

*McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP,*
    243 F.R.D. 1 (D.D.C. 2007)....................................................................................12

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC,*
    286 F.R.D. 8 (D.D.C. 2012) ......................................................................................6

*Nallapati v. Justh Holdings, LLC,*
    No. 5:20-CV-47-D, 2022 WL 4358205 (E.D.N.C. Sept. 20, 2022) ........................13

*Novelty, Inc. v. Mt. View Mktg.,*
    265 F.R.D. 370 (S.D. Ind. 2009)............................................................................14

*Ormeno v. 3624 Georgia Ave., Inc.,*
    309 F.R.D. 29 (D.D.C. 2015)..................................................................................13

*Peninsula Pathology Assocs. v. Am. Int'l Indus.,*
    No. 4:22-MC-1, 2023 WL 7108813 (E.D. Va. Aug. 16, 2023)..............................15

*Smartmatic USA Corp. et al. v. Herring Networks, Inc.*,
    No. 1:21-cv-02900 (D.D.C.) ..........................................................................1, 2, 3, 4, 7, 10, 12

*Westinghouse Elec. Corp. v. City of Burlington*,
    351 F.2d 762 (D.C. Cir. 1965) ...........................................................................................9, 11

*Williams v. Big Picture Loans, LLC*,
    No. 3:17-cv-461, 2019 WL 1186856 (E.D. Va. Mar. 13, 2019)............................................6, 8

**Other Authorities**

Fed. R. Civ. P. 26 ....................................................................................................................6

Fed. R. Civ. P. 34 ..................................................................................................................14

Fed. R. Civ. P. 45 .........................................................................................................5, 6, 14, 15

E.D. Va. L.R. 7 ......................................................................................................................13

D.D.C. L.R. 7 ........................................................................................................................13

Dan Evon, *Is Dominion 'Subsidiary' Chairman Peter Neffenger on Biden's
    Transition Team?*, Snopes, Nov. 18, 2020, https://www.snopes.com/fact-
    check/dominion-peter-neffenger-biden/ ..................................................................................2

*Dominion Voting Machines,* Nov. 20, 2020,
    https://www.reuters.com/article/idUSKBN2801Z7/...............................................................2

Google, *Our Locations: Google Careers*,
    https://www.google.com/about/careers/applications/ ............................................................15

## INTRODUCTION

Herring Networks, Inc. d/b/a One America News Network ("OAN") files this memorandum in support of its motion to compel third party Google LLC ("Google") to comply with a Rule 45 subpoena. On November 21, 2023, OAN served on Google a document subpoena ("Subpoena") in a matter pending in the United States District Court for the District of Columbia captioned *Smartmatic USA Corp. et al. v. Herring Networks, Inc.*, No. 1:21-cv-02900 (D.D.C.) (the "Action"). *See* Exs. A & B. In the Action, the plaintiff (not a party to this motion) is seeking several billion dollars in damages from OAN for allegedly defamatory statements.

The Subpoena's listed place of compliance is in Alexandria, Virginia, which is within 100 miles of Washington, D.C., where Google regularly conducts business in person. Ex. A. Google served its objections to the Subpoena on December 5, 2023, *see* Ex. C, and counsel for the parties then engaged in numerous e-mail and lengthy telephonic meet-and-confers over a stretch of two months, *see* Ex. D.

Google's counsel repeatedly asked for details on what information OAN needed and how Google (and YouTube, which is owned by Google) could try to identify that information. OAN's counsel even sent lists of email addresses and names that would most likely hit on the relevant materials and thereby allow the parties to further focus subsequent searches.

However, on January 23, 2024, in response to one of those substantive emails from OAN's counsel, Google abruptly and surprisingly stated that it was now refusing to do any work to comply with the Subpoena. Google has made no productions of any kind to OAN. That volte-face, after Google failed to comply with the Subpoena by its return date, unfortunately ensured that OAN would have to file this motion to compel. This Court should compel Google to respond to the Subpoena within seven days of the Court's order.

## BACKGROUND

In the U.S. District Court for the District of Columbia, Smartmatic has sued OAN, seeking several billion dollars in damages for OAN broadcasts regarding the 2020 election that Smartmatic alleges to be defamatory. Smartmatic claims that the broadcasts were often posted online, including on YouTube. *See, e.g*., Complaint, ECF No. 1, ¶¶ 15, 173 in 1:21-cv-2900 (D.D.C) (alleging that "OANN also ensured the broad dissemination of the disinformation campaign by posting videos of the broadcasts on its YouTube and Rumble pages. OANN's YouTube page has over 1.4 million subscribers and has received over 215 million views").

Further, Smartmartic claims nearly half a dozen times that OAN made defamatory statements regarding connections between Smartmatic, its Board member Peter Neffenger, and the Biden 2020 Transition Team, on which Neffenger served. *Id.* ¶¶ 99, 184(i), 196(d), 196(f), 227(f). Smartmatic believes that OAN falsely implied that Neffenger was using his position on the Biden Transition Team to benefit Smartmatic. *Id.*; Dan Evon, *Is Dominion 'Subsidiary' Chairman Peter Neffenger on Biden's Transition Team?*, Snopes, Nov. 18, 2020, https://www.snopes.com/fact-check/dominion-peter-neffenger-biden/; *Fact Check: Smartmatic CEO Is Not on Biden's Team, Smartmatic Software Is Not on Dominion Voting Machines,* Nov. 20, 2020, https://www.reuters.com/article/idUSKBN2801Z7/.

During discovery with Smartmatic in the Action, 

---

[1] Because this email was marked "Confidential" by Smartmatic, it is subject to the protective order in the Action, and accordingly OAN will publicly file a redacted version of this memorandum and separately seek leave to file an unredacted version under seal. OAN is barred from sharing that document with Google unless either Smartmatic consents or a Court orders it. OAN intends to seek approval to share the document with Google.



Accordingly, on November 20, 2023, OAN issued a subpoena to Google that listed the place of compliance as Alexandria, Virginia, and a return date of December 6, 2023, which was before the close of discovery in the Action. *See* Ex. A. Service was accepted by Google's registered agent in Washington, D.C., on November 21, 2023. *See* Ex. B.

The Subpoena sought several categories of documents from Google, covering the time period from January 1, 2020, to February 28, 2021. The documents are relevant both to damages and to the underlying merits of the Action. On damages, OAN sought documents regarding Google's removal of videos posted by OAN to YouTube, which OAN planned to then cross-reference with the list of allegedly defamatory broadcasts to demonstrate that how many people actually viewed those videos before they were removed. On the merits, OAN sought documents regarding Peter Neffenger and his involvement with Google, which would go to whether OAN's alleged statements were defamatory and whether they were substantially true, which would defeat any defamation claim for those statements.

On December 5, 2023, Google served its objections to the Subpoena. *See* Ex. C. The parties then engaged in lengthy telephonic meet-and-confers on December 7, 2023, and again on January 11, 2024. The email chain between counsel demonstrates that OAN consistently tried to keep the ball moving by asking for meet-and-confers (including before the close of discovery) and sending additional information to assist Google, in the hopes of avoiding court involvement. *See* Ex. D.

During their meet-and-confers, counsel for Google asked extensive questions about the type of documents OAN requested and why they were relevant. Google's counsel asked for further information about removed OAN videos on YouTube, to help Google identify which videos had been removed and how many people had viewed them before they were removed. Google's counsel said Google had identified three such removed videos but believed that number was too low and that there must be more that they had not yet identified. OAN's counsel answered Google's questions on the phone during their calls and then on January 21, 2024, OAN's counsel emailed a lengthy list of details about removed videos to help Google identify the videos and their viewership totals. Ex. D at 1-3.

OAN's counsel also indicated via email on January 11, 2024, that for the Neffenger materials, the key timeline was a very narrow period between November 2020 and January 2021, and OAN's counsel sent a list of names and email addresses that were likely to hit on calendar entries or meetings between Google and Biden Transition Team members, which could then allow for subsequent targeted searches just on the individuals identified as key players. *Id.* at 4-5.

OAN believed the parties were making significant progress on resolving the Subpoena without the need for litigation. Apparently, that view was not mutual. On January 23, 2024, in response to OAN counsel's January 21 email providing additional information, counsel for Google emailed and abruptly stated that "Google has stopped work on OAN's subpoena" even though Google had not produced any materials. *Id.* at 1. Although Google had previously objected to the Subpoena, this sudden refusal was shocking after the parties had engaged in weeks of back-and-forth discussions in an effort to resolve the dispute and (in OAN's view) had made substantial progress towards identifying the universe of relevant documents needed and even likely search terms.

Google's stated explanation for this sudden decision was that the close of fact discovery had been on December 8, 2023, *see* Scheduling Order, ECF No. 42 in 1:21-cv-2900 (D.D.C.), and that Google did not have to comply with the Subpoena after that date, even though (1) the Subpoena's return date was *before* the close of discovery, (2) Google had refused to comply *before* the close of discovery, and (3) the parties had even engaged in a meet-and-confer *before* the close of discovery. Google's insistence on that unfounded theory has necessitated this motion to compel.

**LEGAL STANDARD**

Rule 45 allows the party serving a subpoena to move "for an order compelling production" of requested documents if the commanded recipient has failed to comply. Fed. R. Civ. P. 45(d)(2)(B)(i).  A trial court is within its discretion to compel compliance with a Rule 45 subpoena

when the discovery sought is relevant. *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013). A discovery request is relevant if there is "*any* possibility that the information sought may be relevant to the claim or defense of any party." *Id.* at 124 (emphasis added); *see also Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2019 WL 1186856, at *3 (E.D. Va. Mar. 13, 2019).

A subpoena respondent "resisting discovery" bears the burden of objecting to a subpoena and proving that the "documents requested are either unduly burdensome or privileged." *In re Denture Cream*, 292 F.R.D. at 123–24 (internal quotation marks and citations omitted); Fed. R. Civ. P. 45(e)(1)(D).

In ruling on a motion to compel, a court first determines whether the subpoena seeks relevant information and then assesses any objections, including those which involve claims of undue burden. *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2019 WL 1186856, at *3. "The person objecting to production has a *heavy burden* to show that the subpoena should not be enforced." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (emphasis added).

In determining whether an undue burden exists, courts consider a number of factors, including "whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *In re Denture Cream*, 292 F.R.D. at 123; *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

**ARGUMENT**

There are two categories of documents on which OAN moves to compel production by Google: (1) documents providing details about OAN-posted videos that Google and YouTube removed pursuant to election-related guidelines, which goes directly to damages in the Action and which are obtainable exclusively from Google and YouTube; and (2) documents about how Neffenger worked with unidentified Biden Transition Team members ███████████ ████████████████████████████████████████ ██████████████ in December 2020 ████████████████████, which goes to the heart of whether OAN's alleged statements about Neffenger's abuse of his role on the Biden Transition Team are defamatory or substantially true, and which likewise are obtainable only from Google/YouTube because the Transition Team no longer exists.

Google has thus far produced zero documents. Despite lengthy and what appeared to be productive meet-and-confers, Google's sudden decision to refuse to work on complying with the Subpoena has forced OAN to seek judicial intervention. These materials are undoubtedly relevant, are not obtainable elsewhere, are narrowly focused, and would not impose a significant burden on Google, especially given its notoriety for having unique expertise and ease in searching for and retrieving materials. The Court should therefore order those materials produced. *See* Part I, *infra*.

The Court should also overrule Google's unusual theory that a third-party subpoena recipient can refuse to comply with a subpoena before the close of discovery—and then invoke the passage of the discovery deadline to refuse to comply even after that deadline. If that were correct, parties would simply wait out the clock. That is certainly not the rule in the U.S. District Court for the District of Columbia, the Court from which the subpoena issued. *See* Part II, *infra*. Google's other objections are boilerplate and unfounded in any event *See* Part III, *infra*.

Finally, because Google so easily could have avoided this motion, the Court should require Google to pay OAN's attorney's fees. *See* Part IV, *infra*.

## I.    Google Is Required to Produce Documents That Are Relevant and Necessary to OAN's Defense of Smartmatic's Lawsuit.

### A.    Documents on OAN's Removed YouTube Videos.

The Complaint alleges a lengthy list of allegedly defamatory statements made during OAN broadcasts, and notes that those videos were often posted online, including on YouTube. *See* Complaint, ECF No. 1, ¶¶ 15, 173 in 1:21-cv-2900 (D.D.C) (alleging that "OANN also ensured the broad dissemination of the disinformation campaign by posting videos of the broadcasts on its YouTube and Rumble pages. OANN's YouTube page has over 1.4 million subscribers and has received over 215 million views").

Smartmatic argues that the extent to which those videos and broadcasts were viewed is related to the issue of damages (if any) to which Smartmatic may be entitled, and alleges that when more people saw the broadcasts, the more harm Smartmatic suffered. *See id.*; *see also id.* ¶¶ 9, 452-54, 466-68.

Google and YouTube have removed certain OAN-posted videos related to election matters, leaving no trace in OAN's own YouTube account. *See* Ex. D at 9. In other words, OAN cannot determine the complete list of dates, titles, or (critically) viewership metrics for those videos before they were taken down. If nobody, or only a few people, saw those allegedly defamatory videos before they were removed, it would strongly undercut Smartmatic's claim of damages resulting from those videos. Accordingly, information about those removed videos, including dates of posting and removal, titles, and viewership data, is directly "relevant and necessary" to OAN, *Williams*, 2019 WL 1186856, at *3, and its production should be compelled, *see In re Denture Cream*, 292 F.R.D. at 124 ("[A] request for discovery should be considered relevant if there is *any*

*possibility* that the information sought may be relevant to the claim or defense of any party.")
(emphasis added)

Further, these materials are narrowly targeted and unavailable from any other source. Only
Google and YouTube can see the data for removed videos. Although OAN's counsel was able to
collect details, primarily titles, of *some* removed videos based on contemporaneous notes, the list
is not complete and most critically does not include viewership information. Ex. D at 2.

Nor is there any significant burden on Google in complying with this request. It has OAN's
YouTube account IDs, as well as the titles of as many removed videos as OAN could determine.
*See id.* At no point during the meet-and-confers or in Google's email abruptly shutting down all
work on the Subpoena did Google ever complain about the burden from complying with this
request.

Further, Smartmatic seeks billions of dollars in damages in this case, which strongly favors
enforcing OAN's targeted subpoena to a third party, as OAN must be able to seek relevant
information to defend itself against such extraordinary claims of damages. *See BuzzFeed, Inc. v.*
*U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) (finding no undue burden for non-
party to comply with defamation defendant's subpoena given the amount in controversy);
*Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 767 (D.C. Cir. 1965) ("The fact that
these are very important cases with large sums of money at stake is relevant in determining the
reasonableness of the [third-party] subpoena.").

For all these reasons, the Court should compel Google to comply with the Subpoena and
produce information, including viewership totals, for all videos posted by OAN and removed by
Google and YouTube.

**B.** **Documents Regarding the Biden Transition Team's Involvement in the December 2020** ███████████████████

The second category of relevant materials the Court should compel covers documents related to the Biden Transition Team's involvement in Google's December 2020 ███████████ ██████████████

Recall that the Complaint in the Action alleges that OAN defamed Smartmatic by implying that Peter Neffenger, who was simultaneously on Smartmatic's Board and the Biden Transition Team in November 2020 to January 2021, was using his role on the Transition Team to benefit Smartmatic even though he was allegedly not involved in election matters for the Transition Team. Complaint, ECF No. 1, ¶¶ 99, 184(i), 196(d), 196(f), 227(f), No. 1:21-cv-2900 (D.D.C.).

Discovery during the Action has revealed ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████ ██████████████████████████████████ ███████████████████████████ go to the heart of whether OAN's alleged statements about Neffenger were defamatory, given that it now appears to be entirely true. Further, even if not completely true, a statement cannot serve as the basis for a defamation claim if it is even *substantially* true. "If the 'sting of the charge' is substantially true, the defamation suit must fail." *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 90 (D.D.C. 2019).

Accordingly, OAN must have access to documents about who on the Biden Transition Team ███████████████████████████████████████ when it occurred, what was said during any meetings, and what documents were shared between Google/YouTube and

the Transition Team. Because the Transition Team no longer exists, those materials are obtainable exclusively from Google.

The relevant timeline is also narrow. During meet-and-confers, OAN's counsel stated that the key time would have been after the 2020 election and before President Biden's inauguration, meaning a short period from November 2020 to January 2021.

Nor would there be any undue burden on Google. Again, the company made its name by being able to quickly identify relevant materials across the entire internet in a split second. Searching for the materials here is a breeze by comparison. OAN's counsel even provided lists of Neffenger's known email addresses (in the somewhat-unlikely event Neffenger himself was corresponding directly with Google), as well as names drawn from public sources about (a) which outsiders were most involved with pressuring YouTube to remove videos and (b) which Google and YouTube employees were most involved in working on those requests. Those lists ostensibly would allow Google and YouTube to pinpoint exactly when these meetings and communications occurred, who was *actually* involved in them, and then narrowly target those specific individuals' records.

Moreover, as noted above, Smartmatic seeks billions of dollars in this case, a factor that strongly supports enforcing compliance with OAN's relevant, targeted subpoena to a third party. *See BuzzFeed*, 318 F. Supp. 3d at 361; *Westinghouse*, 351 F.2d at 767.

But despite OAN working at every step to minimize the burden on Google, Google itself was apparently just going through the motions, followed by its abrupt decision to stop work after failing to turn over even a single document. The Court should compel Google to produce *all documents* related to the involvement of any member of the Biden Transition Team and Google's December 2020 ███████████████████████████

## II.     Google Cannot Refuse to Comply with a Timely Subpoena.

During the meet-and-confers and in its email abruptly refusing to continue working on responses to the Subpoena, Google did not object to burden, relevance, or whether the materials sought were more easily available elsewhere. Rather, the only objection provided during those times was that fact discovery closed in the Action on December 8, 2023, which had since passed. Ex. D at 1. But the Subpoena here was served on November 21, 2023, and had a return date of December 6, 2023. Exs. A & B. Accordingly, not only was the subpoena served before fact discovery closed, but compliance itself was required before fact discovery closed. The parties even engaged in a meet-and-confer before discovery closed. Ex. D at 10.

Google's position appears to be that even when a subpoena is properly served and has a return date *before* discovery, the recipient can simply refuse to comply before the discovery period ends, and that this magically absolves the recipient of ever having to comply. That position is not only wrong but "would create an incentive to delay responses and then 'run out the clock.'" *McFadden v. Ballard, Spahr, Andrews, & Ingersoll, LLP*, 243 F.R.D. 1, 11 (D.D.C. 2007).

*First*, to the extent Google claims that producing documents now would count as engaging in prohibited discovery after the close of discovery, that position is obviously wrong. OAN is "not seeking an amendment to the scheduling order to reopen discovery; [it is] demanding the production of documents pursuant to requests served during the discovery period." *Barnes v. D.C.*, 289 F.R.D. 1, 20 (D.D.C. 2012). In other words, OAN is "not asking for 'new' discovery—[it is] asking for discovery [it] should have already received." *Id.*

*Second*, to the extent Google's position is that OAN cannot file a motion to compel after the close of discovery, that is also wrong. "[C]ourts routinely consider motions related to discovery, even though they are filed outside the period." *Lurie v. Mid-Atl. Permanente*

*Med. Grp., P.C.*, 262 F.R.D. 29, 31 (D.D.C. 2009). That is because "the Federal Rules do not contain a provision regarding the time of filing for a motion to compel, and this Court has previously held that crafting such a rule would create perverse incentives in discovery." *Ormeno v. 3624 Georgia Ave., Inc.*, 309 F.R.D. 29, 34 (D.D.C. 2015). The default in the U.S. District Court for the District of Columbia is that the issuing party is "correct to wait until" the close of discovery, then "assess [a response's] sufficiency before seeking Court intervention in the discovery process." *Armenian Assembly of Am., Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 56 (D.D.C. 2010).

To be sure, some courts and individual judges impose their own requirements on when a motion to compel must be filed,[2] but no such rule is in place for this case. The U.S. District Court for the District of Columbia's local rules contain no such requirement, nor does Judge Nichols's scheduling order in this case, *see* ECF No. 42 in No. 1:21-cv-2900 (D.D.C.). The Magistrate Judge presiding over certain discovery disputes has stated as recently as December 20, 2023, that discovery motions could be filed after the close of discovery so long as they weren't filed "months after discovery is closed or [regarding] issues that you all knew about that just didn't get raised in a timely fashion." ECF No. 156 at 19 in No. 1:21-cv-2900 (D.D.C.). As noted above, not only was the return date for the Subpoena before the close of discovery, but OAN and Google actually held a lengthy meet-and-confer before the close of discovery.

Moreover, OAN could not file a motion to compel until the parties reached an impasse, *see* D.D.C. L.R. 7(m); E.D. Va. L.R. 7(E), which did not occur until January 23, 2024, when Google abruptly and unexpectedly refused to work on the Subpoena despite extensive and detailed

---

[2] For example, the Southern District of West Virginia has a local rule requiring motions to compel within 30 days after the due date has expired, *see CSS, Inc. v. Herrington*, No. 2:16-CV-01762, 2018 WL 7131556, at *3 (S.D.W. Va. Jan. 9, 2018), and the Eastern District of North Carolina requires such motions within 30 days after discovery closes, *see Nallapati v. Justh Holdings, LLC*, No. 5:20-CV-47-D, 2022 WL 4358205, at *2 (E.D.N.C. Sept. 20, 2022).

conversations and emails between the parties to narrow the topics and timelines for production. If Google had simply forthrightly stated at the onset that it would never comply with the Subpoena, OAN could have filed this motion sooner. Google cannot now be heard to complain about the timing.

## III.   Google's Other Objections Are Meritless.

Google's response to the Subpoena raised a host of boilerplate objections, but those should be summarily disregarded. *See, e.g., Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'[G]eneral objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered.") (citing *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008)); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavors them."). As explained above, the materials sought to be compelled are narrowly targeted, critically important, and will not impose an undue burden on Google. That is enough to warrant granting the motion.

Google's email suddenly refusing to comply with the Subpoena also claimed that the "place of compliance" for Rule 45 would be in California. Ex. D at 1. It is unclear what that meant, given that the Subpoena clearly dictates the place of compliance as Alexandria, Virginia. *See* Ex. A. Rule 45 authorizes a place of compliance that is within 100 miles of any location where the recipient regularly conducts business in person, *see* Fed. R. Civ. P. 45(c)(2)(A), and Google cannot plausibly claim it does not regularly conduct business in person in Washington, D.C., which is less than 100 miles from the place of compliance. After all, Google's own website brags:

> Google DC is a regional hub for many teams, including legal, global business, policy teams, and a strong engineering presence. And as a major government and policy office, Googlers in DC work on a wide array of projects that touch the federal government - recently having

helped the Census on its first ever online collection effort. Our
Google office is located in the heart of downtown Washington D.C.

Google, *Our Locations: Google Careers*, https://www.google.com/about/careers/applications/
locations/washington-dc/ (last visited Jan. 25, 2024). That same page lists over 50 job openings
currently in Google's DC office, demonstrating just how enormous Google's Washington in-
person presence is.

## IV.   The Court Should Award Attorney's Fees.

Rule 45 provides that when a party or attorney fails to "take reasonable steps to avoid
imposing undue burden or expense on a person subject to [a] subpoena," the court "must enforce
this duty and impose an appropriate sanction—which may include lost earnings and reasonable
attorney's fees." Fed. R. Civ. P. 45(d)(1); *see Peninsula Pathology Assocs. v. Am. Int'l Indus.*, No.
4:22-MC-1, 2023 WL 7108813, at *2 (E.D. Va. Aug. 16, 2023).

This is not a case where the subpoena presented difficult or novel issues. Google wasted
significant amounts of OAN's time by first leading OAN to believe that a resolution could be
reached without judicial involvement, and then by raising a meritless basis for refusing to comply,
necessitating OAN's drafting and filing of this motion. This is a classic scenario for requiring
Google to pay OAN's attorney's fees under Rule 45.

## CONCLUSION

The Court should grant the motion to compel and award OAN its attorney's fees.

By:  __/s/ R. Trent McCotter_____

**BOYDEN GRAY PLLC**
R. Trent McCotter
VSB# 94018
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for OAN*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I will also serve the following via email (with the caveat noted in footnote 1 above, as applied to Google):

Benjamin Margo
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

*Counsel for Google*

J. Erik Connolly
Nicole E. Wrigley
Ronald S. Betman
Caitlin A. Kovacs
Olivia E. Sullivan
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
rbetman@beneschlaw.com
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

*Counsel for Smartmatic*

*/s/ R. Trent McCotter*
R. Trent McCotter